McWane. This court has held that in determining the differences between the prior art and the claims, the question is not whether the differences themselves would have been obvious, but whether the claimed invention as a whole would have been obvious. In this vein, I think it's important to understand the general state of the art at the time of the invention. For many reasons that were discussed in the 329 reissue patent, Mr. Waugh recognized a need in the utility pole market that he felt could be addressed with a tapered ductile iron utility pole. In the Waugh 851 patent, Mr. Waugh disclosed a process by which he could create a tapered ductile iron pole using centrifugal casting techniques, the traditional technique known as the Delavaude process. Now it's important to understand that these traditional Delavaude centrifugal casting techniques were created for centrifugal casting of non-tapered cylindrical pipes. That was the state of the art. Now why is this important? It's important because the last step in the process of creating these ductile iron centrifugally cast poles involves passing these poles or pipes through an annealing oven. Now of course, with a non-tapered cylindrical pipe or pole, you can push that along the running rails of the annealing oven and it goes in a generally straight fashion through the annealing oven. Now... Is it actually rolling or is it... Yes, Your Honor, it's actually rolling. Right, and if it's conical in any way, it'll start to veer. Correct. And this is why this is so important because Mr. Waugh applied these centrifugal casting techniques to try to make a tapered pole using technology that was really designed for non-tapered cylindrical pipes. And what he discovered was that as you tried to push these poles through the annealing oven, one side outran the other and crashed into the side of the annealing oven. So the three-strand reissue patent addresses this problem in the form of the running ring. Now, McWane's argument is that the WA-851, one of their arguments, the WA-851 patent discloses a flange that was used to basically attach the pole to a base, like a cement base, for example. And the argument goes, oh, well, you know, that's a flange and that could be a running ring. Well, the WA-851 patent was completely silent as to that last process of pushing the pole through the annealing oven. The design considerations for a running ring that's designed to keep the pole from crashing into the side of the annealing oven are completely different than the design considerations for a flange that's going to be used to attach this pole to a foundation. I don't find support in the claims or the spec for your proposed construction of running ring. Certainly, the spec describes certain uses of the running ring during the casting process, but the claims don't require such steps. And I don't see a clear definition or other information regarding the structural attributes of the running ring. Well, Your Honor, it's important to note that the claim doesn't claim just a flange. It claims a, quote, running ring. Now, this is a term that was created by the patentee. It's a special term, and that special term, it is proper to look at the specification, as you know, to see how that term is defined. That term implies certain, I think, design attributes that I'm going to... But it's improper to read limitations from a preferred embodiment described in the specification, even if it's the only embodiment. That's EPO's text, the Pegasus text. Yes, Your Honor. Well, I think that being said, the specification, I do believe, is informative in defining what a term, as this court is aware, a patentee can act as his own lexicographer. And it was clear that the patentee in this case, he actually made up this term, running ring. And I do believe that it's proper to at least look at the specification for guidance on how that term should be defined.  Mr. Peskis, what exactly do you say in the spec the inventor acted as his lexicographer? Is it the language at column four, lines, I guess, seven through 14? And where do you make that argument, the lexicography argument? In our reply brief, Your Honor. So I guess you have two questions to deal with, one from me and one from Judge Wallach. I should have said, where do you make it below? I'm sorry, Your Honor, what was the... Well, no, you say that this is a situation where the inventor acted as his own lexicographer. And my comment in response to that was, are you referring to the language at the top of column four between, I guess, about lines seven and 14, at appendix 49? That's where there's a clear discussion of this ring or flange. Yes, Your Honor, that is part of what we're looking at as well. Now, the specification in appendix page 49... Yes, lines seven through 16, that is correct. You know, there's language there that says, for example, once the pole is removed from the mold, this flange ring is engaged by a control rail such that the pole can be run through a straight annealing furnace. I guess what I'm wondering is, that's the language you point to. It seems to me, with due respect, a little bit of a stretch to say that that language shows the inventor acting as his own lexicographer. He's describing something about the running ring and what it does and so forth. But it doesn't seem to me that it rises to the level of his being his own lexicographer as we've delineated it in our cases. Well, Your Honor, I guess my response would be that the same phrase is used, and the phrase in the claim is running ring. And that phrase running ring is used in the specification and it's... You're saying the running, that adjective there. Running ring. Yeah. Yes, Your Honor. I guess a gerund, maybe. You're saying that that is what you really are pointing to. Yes, Your Honor. We use that specific phrase in the claim, and that specific phrase in the specification, there is a discussion as to what that running ring does. As you know, Your Honor, we also filed a motion to amend in which we explicitly put in language, we tried to explicitly put in language with regards to the running ring, which was, of course, denied by the PTAB on the grounds that even the amended claims would be obvious. And which brings me back to my original point, which is, you know, the patentees or the patent owners insight that, okay, you've... Admittedly, there were flanges in existence. There are flanges to connect pipes together, flanges to connect a pole or a pipe to a foundation. But the insight to say, wait a minute, we can modify this flange to repurpose it in a way that will now allow us to push these tapered poles to an annealing oven. And it's not a trivial thing. You have to... If the flange is too... If the diameter of the flange is too great, it's going to hit the bottom of the annealing oven. If it's too short, it's going to hop over the rail. If it's not strong enough, there's constant force on that running ring. As the pole is pushed through, it could fail. So, you know, there are different design considerations for the running ring. And I think in hindsight, you know, you can say, oh, look, there's a flange. It looks just like a running ring. There you go. It's obvious to take the flange and modify it to... But it's more than that. It's that aha moment where you go, hey, wait, we know these flanges are used for something totally different, but what if we used it... What if we put the pole on the side and we used it to push it along and keep it from, you know... That's the invention as a whole, and that's what I would like the court to focus on, not just laser focus on, okay, would it be obvious to change the flange to do this, but, you know, that kind of aha moment that the inventor had to actually use something that was never used for that before for a completely different purpose. I'll go ahead and reserve that. Mr. Kelly. May it please the court. Counsel for Waugh just referred to the aha moment of the inventor, and I'd like to point the court first to page seven of the gray brief. And I think this really describes clearly what the aha moment was for the patentees. And in this section, Waugh is discussing the board's obviousness determinations and particularly being critical of the obviousness determinations that the board reached. And at the bottom of the main paragraph there on column seven, Waugh states, referring to the board, it must also consider the patentees' insight that flanges used in the prior art, and then it goes on, could conceivably be used for completely different purposes. And that really confirms what the issue is in this case, because the patentees' insight was that existing prior art flanges could be used in a different way. There's no difference in the prior art flange. Waugh didn't invent a new flange. There's nothing new about the flange itself physically. They believe, allegedly, that they came up with a new use for the flange. The problem is claim 10 is a product claim. And I'd like to address the board's construction of the running ring limitation in claim 10 in that context. The board's construction was correct for a couple different reasons. First, it was based directly on the specification's definition of what the running ring physically is. The specification says the running ring is simply a larger base, circle, or ring cast at the pole's larger diameter end. It's very clear about that. And that's important because, again, claim 10 is a product claim. It's defined by what the pole physically is. The second point is that there's no other physical attribute of the running ring that's described anywhere in the intrinsic record. You can look in the specification, the prosecution history, wherever you want. You won't find any definition of the structural features of the running ring other than the fact that it's a larger base, circle, or ring cast at the large end of the pole. The board recognized that. And under the broadest reasonable interpretation standard, there's simply no other reasonable construction they could have reached to define what the running ring physically is. The board also correctly rejected Wah's proposed construction of the running ring. And they did so because the construction focuses on what the running ring does instead of what it is. And, again, that's confirmed at page 7 of the Gray Brief. But the board went further and said that the entire record is devoid of any evidence of structural differences between the prior art and the claimed running ring. They focused on this repeatedly. And what they recognized was that the proposed construction that Wah offered was an attempt to effectively backdoor an alleged method invention into a product claim. The board recognized the claim to it as a product claim. And they rejected Wah's construction for that reason. Under the board's construction, there's no dispute the claims 10 through 13 are obvious. But even if this court were to adopt a narrower construction, substantial evidence would still support the board's conclusion that claims 10 through 13 are obvious. It's undisputed that the Wah 851 prior art discloses a circular ring-shaped flange. Would that actually be the question, whether substantial evidence supported a finding that the board didn't make but could have made? It's really more of a harmless error argument, Your Honor, because even if this court adopts an error of construction, the evidence remains that the board's conclusions of obviousness with respect to 10 through 13 would remain the same. So even if this board can reach, as a matter of law, a new claim construction, but all of the evidence still supports the determination in vacating the board's obviousness determinations for claims 10 through 13, wouldn't produce a different result. All the evidence is there. If you were to remand to the board, they would just find the same thing again. And I'll explain why. The board was clear that they found specifically, there's no structural difference between the Wah 851 flange and the running ring, they said the trial record is devoid of any evidence of any structural difference between the prior art flange and the running ring, and they even went further. They said that a person of ordinary skill would have known how to configure any running ring to work with any annealing oven or any running rail. There's testimony from our expert to that effect. And in fact, Wah has never disputed in the IPR or anywhere in the appeal that it would have been obvious to configure the flange in the prior art to perform the guiding function in his claim construction. So even under a very narrow interpretation of running ring, there's effectively no dispute that claims 10 through 13 are obvious. I'd like to move on to the board's denial of the motion to amend. And really, I'd like to begin at page 24 of the joint appendix in the board's decision. I think this is very important. Mr. Wah's argument is only that the board failed to properly allocate the burden of proof with respect to the motion to amend. But in the board's decision at page 24, and I'm at the bottom of the main paragraph, they cite to this court's order granting rehearing en banc and aquaproducts. At the time this opinion was crafted, the board knew that aquaproducts was being reheard en banc, and they specifically noted that the issue was to address burdens of persuasion and productions regarding the motion to amend. And they were very careful to note that at the beginning of their analysis of the substitute claims. Knowing that the burden of proof might change, the board then deliberately assessed the substitute claims in two ways. First, they found under the old standard that the patent owner failed to meet their burden of establishing patentability. But they didn't stop there. They went further and made a separate and independent finding of obviousness. The evidence of record also demonstrates that the subject matter of the running ring limitation or the variable casting limitation, which is the other added feature, would have been obvious to a person of ordinary skill in the art. They took deliberate care to make those separate and independent findings of obviousness. And it's clear from page 24 that they did that to make sure the decision would survive whatever the outcome in aquaproducts was. The other point I would make on that issue is that WHA identifies no error whatsoever in the board's factual findings that stem from that alleged placement of the burden of proof. So even if this court were to find some issue with the court's references to the pre-aquaproduct standard, that leaves this court with the board's undisputed findings that all of the limitations in the substitute claims were known, that it would have been obvious to combine them, and that they would have been entirely obvious. And so if this court were to vacate the board's denial of the motion to amend, there's no question what would happen on remand. The board would again find the substitute claims obvious. And we would be right back here where we started. If there are any questions from the panel, I'd be happy to entertain them. Otherwise, I'll yield the rest of my time. Thank you, Mr. Kelly. Mr. Vasquez, you have some time left. Thank you. So Counsel for McWane is making a big deal about our statement regarding the new use for the flange and that we always talk about the flange with regards to what it does as opposed to what it is. The important thing to note, though, is that what the running ring does... That's a concession you just made. What's that? I said that's a concession you just made. No, Your Honor, we're saying that's what McWane's argument is. The important thing to note, though, is that what the running ring does informs what it is. It informs what the structural requirements of that running ring is. How does it differ from the prior art, physically? Well, there's evidence on the record from not only our expert, but from McWane's expert as well, that basically says once you have the parameters of the annealing oven, how far apart the running rails are, the distance between the running rail and the floor of the then that will inform the structural requirements in terms of the dimensions, thickness, length of what the running ring should be. Now, this court in the Orthonetics case dealt with an issue regarding... In Orthonetics, it was a claim directed to a wheelchair that included the fray so dimensioned to be insertable through the space between the doorframe of an automobile and one of the seats thereof. This court found the frays to be as accurate as the subject matter permits because automobiles come in various sizes. And as long as those of ordinary skill in the art realize the dimensions could be obtained, that's all that's required. This is a similar situation. Annealing ovens can vary depending on the manufacturer, the model. So not only our expert, but McWane's expert as well testified a person of ordinary skill in the art, once they have those parameters of the annealing oven, would be informed with regards to the physical requirements of that running ring. So Mr. Vasquez, your challenge here is to the claim construction the board used. Yes, Your Honor. And you don't... But do you challenge the obviousness determination under the board's claim construction? In other words, assuming for the moment one agrees with the claim construction of the board on this term running ring, I don't understand you to be challenging the obviousness finding based on that claim construction, although you do challenge the claim construction. Yes, Your Honor. We do challenge the claim construction. The claim construction that the board settled on, no, we did not challenge that. We challenged the... The construction, but not the determination based on the construction. In other words, if one accepts the board's... No, you're right. Correct, Your Honor. Correct, correct. Yeah. With regards to the motion to amend, in our reply brief, we did address and we did make arguments with regards to the non-obviousness of the proposed claims. And one of the key arguments that we made was that the board improperly focused on the differences between the flange and a running ring as opposed to the invention as a whole. That insight moment that the inventor had to basically take a flange and repurpose it, redesign it for a running ring. But unlike Bosch, the board very carefully made an alternative finding. I'm sorry, Your Honor. Alternative finding with regards to... That would have found the amended claims unpatentable as obvious even if Mr. Wow did not bear the burden of establishing that. Yes, Your Honor. Your time's up. Okay. Thank you, Your Honor. Thank you, counsel.